**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THOMAS R. AMES, ) <br> ) <br>       Plaintiff ) <br> ) <br>         v. ) <br> ) <br> OFFICER JOEL SHAW, individually, ) <br> COUNSELOR M. HUDSON, individually, ) <br> OFFICER ANNA MCBEE, individually, ) <br> WARDEN RANDY PFISTER, individually, ) <br> SHERRY BENTON, individually, JOHN ) <br> BALDWIN, individually <br> <br>       Defendants. | Case No. 16-CV-9213 <br> Honorable Ruben Castillo <br> <br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Plaintiff, Thomas R. Ames ("Mr. Ames"), by and through his attorneys, Greenberg Traurig, LLP, brings the following complaint against Defendants Joel Shaw ("Officer Shaw"), M. Hudson ("Counselor Hudson"), Anna McBee ("Officer McBee"), Randy Pfister ("Warden Pfister"), Sherry Benton ("Ms. Benton"), and John Baldwin ("Mr. Baldwin") (collectively referred to as the "Defendants"), and states as follows:

**INTRODUCTION**

1. On or around September 10, 2015, Officer Shaw and Counselor Hudson violated Thomas R. Ames' constitutional rights when they fired Mr. Ames from his job in the kitchen at the Stateville Correctional Center in Joliet, Illinois ("Stateville"). Officer Shaw and Counselor Hudson fired Mr. Ames in retaliation for Mr. Ames filing a complaint against Officer Shaw using Stateville's grievance system, a constitutionally-protected activity under the First Amendment. Officers McBee, Warden Pfister, Ms. Benton, and Mr. Baldwin further violated

Mr. Ames' constitutional rights when they failed to evaluate and independently investigate the grievance and appeal and acquiesced to this unconstitutional retaliation by merely signing their respective decisions.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution, where Plaintiff seeks to redress the deprivation of rights by the named Defendants.

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper because the parties reside in this district, and the events giving rise to the claims occurred within this district.

## PARTIES

4. From approximately December 1999 until September 2015, including at the time of the incident, Mr. Ames was incarcerated at Stateville. At Stateville, Mr. Ames held several jobs, including stocking the warehouse, painting, and, most recently, managing the day-to-day operations of Stateville's kitchen. Mr. Ames performed his job in a satisfactory manner and at all times met his employer's legitimate job expectations.

5. Since his incarceration, Mr. Ames has devoted his time to bettering himself in many ways, including education. While incarcerated, Mr. Ames has earned his GED and paralegal certificate, and recently was accepted into an associate's degree program at Pinckneyville. Mr. Ames has not been subject to any disciplinary action for at least a decade, and the discipline he received immediately before that was for a minor infraction.

6. Since at least approximately 2015, Officer Shaw has been employed as an Internal Affairs Officer at Stateville by the Illinois Department of Corrections ("IDOC"). Upon information and belief, Officer Shaw resides in Illinois.

7. Since at least approximately 2015, defendant Counselor Hudson has been a Temporarily Assigned Correctional Counselor at Stateville, who, upon information and belief, reviews initial inmate grievance complaints. Counselor Hudson is employed by IDOC. Upon information and belief, Counselor Hudson resides in Illinois.

8. Since at least approximately 2015, Officer McBee has been a Grievance Officer at Stateville who, upon information and belief, reviews appeals of initial decisions on inmate grievances made by counselors at the institutional level. Officer McBee is employed by IDOC. Upon information and belief, Officer McBee resides in Illinois.

9. Since at least approximately 2015, Warden Pfister has been the Warden at Stateville, who, upon information and belief, is the final decision-maker in regards to inmate grievances at Stateville. Warden Pfister is employed by IDOC. Upon information and belief, Warden Pfister resides in Illinois.

10. Since at least approximately 2015, Ms. Benton has been a member of the Administrative Review Board of IDOC, who, upon information and belief, reviews final institutional decisions on inmate grievances. Upon information and belief, Ms. Benton resides in Illinois.

11. Since at least approximately 2015, Mr. Baldwin has been the Acting Director of the IDOC, who, upon information and belief, provides approval of final decisions made on inmate grievances at the administrative level. Upon information and belief, Mr. Baldwin resides in Illinois.

12. All claims against Defendants are brought against them in their individual capacities while they were acting under the color of law.

**FACTS**

13. On or around September 2, 2015, Mr. Ames was employed as a dietary worker in Stateville's kitchen. Mr. Ames' job responsibilities included managing the day-to-day operations of the kitchen, unloading food stock from supply trucks, and keeping inventory.

14. In this role, Mr. Ames did not prepare "food trays," which are meals provided to inmates who could not leave their cells.

15. On or around September 2, 2015, Mr. Ames suddenly and unexpectedly was taken from his job assignment to the Internal Affairs ("IA") office for an interview. During the interview, Officer Shaw informed Mr. Ames that IA had allegedly found excess food materials on food trays around the prison. In a threatening and coercive manner, Officer Shaw told Mr. Ames that someone "needs to step up and take the blame" for the excess food and that "someone has to go down for all of this stuff." Officer Shaw repeatedly encouraged Mr. Ames to "tell me something," indicating that Officer Shaw sought to disregard the truth in favor of placing the blame on another worker. Officer Shaw threatened Mr. Ames that failure to "tell [him] something" would result in a loss of his job. Officer Shaw demanded that Mr. Ames convey this threat to other kitchen workers on Officer Shaw's behalf, and made clear that Officer Shaw was disinterested on Mr. Ames helping him to locate the actual culprit. Rather, Officer Shaw demanded that Mr. Ames identify anybody, regardless of whether he had actually done anything wrong.

16. Mr. Ames repeatedly informed Officer Shaw that he had no information regarding these alleged incidents. When Mr. Ames refused to convey Officer Shaw's threats to the other inmates, Officer Shaw became visibly angry and agitated. At no time throughout the interview did Officer Shaw implicitly or expressly accuse Mr. Ames of possessing the excess food, but instead made clear that someone else (not Mr. Ames) had taken the food. Further, Officer Shaw

did not provide Mr. Ames with an "official interview sheet" at any time, which, upon information and belief, is standard practice or required for an interview of this kind.

17. On or around September 2, 2015, following the interview with Officer Shaw, Mr. Ames filed a complaint using Stateville's grievance system to document Officer Shaw's threatening and coercive tactics. Mr. Ames submitted the grievance to Counselor Hudson for review. A true and genuine copy of the September 2, 2015 grievance is attached hereto as **Exhibit 1**. By submitting a complaint against prison staff, Mr. Ames engaged in constitutionally-protected activity under the First Amendment.

18. On or around September 10, 2015, Dietary Manager Quentin Tanner informed Mr. Ames that Mr. Ames was one of six kitchen workers who had been terminated from their job assignments because of the alleged excess food materials found around Stateville. Upon information and belief, two of these kitchen workers, inmates Flynard Miller and Clifford Powers, received tickets for possession of excess food materials. At no time did Mr. Ames possess, improperly provide, receive a ticket for, or have any knowledge of the alleged excess food materials, as Officer Shaw acknowledged during the September 2 interview.

19. On or around September 10, 2015, Mr. Ames received a letter dated September 9, 2015 from Karen Rabideau of the Placement and Assignment Office of Stateville. The letter notified Mr. Ames that he had been terminated from his job assignment in the kitchen, citing "staff recommendations and administrative reasons." The letter does not mention the alleged excess food materials. Upon information and belief, the "staff recommendation" came from Officer Shaw and/or Counselor Hudson.

20. On information and belief, the reasons cited for Mr. Ames' termination were false and pretextual, as evidenced, in part, by the conflicting reasons that were communicated to Mr.

Ames regarding why he was terminated. The actual reason that Mr. Ames was terminated was because he refused to falsely identify someone in response to Officer Shaw's demands, refused to assist Officer Shaw in falsely identifying someone, and filed the grievance against Officer Shaw.

21. The close temporal proximity between Mr. Ames' refusal to participate in a sham investigation, filing of his initial grievance, and termination supports the conclusion that Mr. Ames' termination was, in fact, retaliatory.

22. Officer Shaw was acting under a color of law in connection with all acts and omissions set forth in Paragraphs 15, 16, 17, 19, 20, and 21.

23. On or around September 10, 2015, Mr. Ames filed a grievance to report the improper retaliation that resulted in his termination. Again, Mr. Ames submitted this grievance to Counselor Hudson for review.

24. On or around September 16, 2015, Counselor Hudson responded to Mr. Ames' September 10, 2015 grievance. Counselor Hudson's response affirmed the firing, and stated the following:

> Job assignments are a privilege and, in accordance with Department Rule 420, Assignment of Committed Persons, 'a committed person may be removed from his assignment and/or reassigned by the Chief Administrative Officer or by the Assignment Officer with subsequent approval by the Chief Administrative Officer. Removal and/or reassignment shall be based upon matters including, but not limited to, the committed person's inability or incompetence in performing or completing the assignment, disciplinary reasons, the committed person's request for assignment change, staff recommendations, security or administrative reasons.'

25. On or around September 16, 2015, Mr. Ames and Counselor Hudson had a conversation during Counselor Hudson's rounds. During this discussion, Mr. Ames asked Counselor Hudson why he had not responded to Mr. Ames' September 2, 2015 grievance.

6

Counselor Hudson questioned "what kind of relief could [Mr. Ames] possibly get from [the September 2] grievance," and admitted that "it is not likely that [Officer Shaw is] ever going to admit to threatening [Mr. Ames]." Counselor Hudson refused to investigate Mr. Ames' grievance.

26. On or around September 16, 2015, Mr. Ames appealed Counselor Hudson's refusal to conduct even a cursory investigation into Mr. Ames' grievance against Officer Shaw, by forwarding Counselor Hudson's September 16, 2015 response (or lack thereof) to the Stateville Grievance Office.

27. Counselor Hudson was acting under a color of law in connection with all acts and omissions set forth in Paragraphs 17, 19, 20, 21, 23, 24, 25, and 26.

28. From approximately September 20, 2015 to February 15, 2016, Mr. Ames submitted numerous Offender Request Slips, seeking a response to the September 2, 2015 grievance and appeal of his termination.

29. On or around March 7, 2016, Officer McBee finally responded to Mr. Ames' requests. Officer McBee's response denied Mr. Ames' appeal and used language identical to Counselor Hudson's September 16, 2015 denial, confirming that Officer McBee simply rubber-stamped the prior decision without any independent analysis. At no time did Officer McBee contact Mr. Ames to discuss his grievance. On information and belief, Officer McBee did not otherwise investigate the appeal in any manner.

30. Officer McBee's identical response and failure to interview Mr. Ames demonstrates that she merely acquiesced to Counselor Hudson's recommendation and did not perform an independent investigation of her own.

7

31. Officer McBee was acting under color of law in connection with all acts and omissions set forth in Paragraphs 29 and 30.

32. On or around March 8, 2015, Warden Pfister concurred with Officer McBee's response. Warden Pfister's concurrence did not include any comments and merely contains his signature. At no time did Warden Pfister contact Mr. Ames to discuss his grievance. On information and belief Warden Pfister did not otherwise investigate the appeal in any manner.

33. Warden Pfister's failure to (a) provide any comments or (b) contact Mr. Ames or any other witnesses who could have corroborated Mr. Ames' allegations demonstrates that he merely acquiesced to Counselor Hudson's and Officer McBee's recommendations and did not perform an independent investigation of his own.

34. Warden Pfister was acting under color of law in connection with all acts and omissions set forth in Paragraphs 32 and 33.

35. On or around March 11, 2016, Mr. Ames appealed this decision to the Administrative Review Board of the IDOC.

36. On or around July 19, 2016, Ms. Benton denied Mr. Ames' appeal, and Mr. Baldwin concurred with this decision. The denial and concurrence does not provide any comments on the merits to Mr. Ames' grievance. Additionally, neither Benton nor Baldwin contacted Mr. Ames before issuing their respective decisions. On information and belief, Messrs. Benton and Baldwin did not otherwise conduct any independent investigation into Mr. Ames' appeal.

37. Upon information and belief, the lack of comments and failure to contact Mr. Ames or any other witness who could have corroborated Mr. Ames' allegations demonstrates that Ms. Benton and Mr. Baldwin acquiesced to Counselor Hudson's, Officer McBee's, and

Warden Pfister's recommendations and did not perform an independent investigation of their own. Messrs.

38. Benton and Baldwin were acting under color of law in connection with all acts and omissions set forth in Paragraphs 36 and 37.

39. To date, Mr. Ames has not received a response to his September 2, 2015 grievance.

40. The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress.

## COUNT I
### Violation of 42 U.S.C. Section 1983
### Retaliation Against Protected First Amendment Action

41. Plaintiff adopts and incorporates by reference paragraphs 1 through 40 above as though fully set forth herein.

42. On or around September 10, 2015, Officer Shaw and Counselor Hudson were acting under the color of state law while they were employed by the IDOC at Stateville, and in connection with their decisions relating to Mr. Ames' employment.

43. On or around September 10, 2015, Officer Shaw and Counselor Hudson, jointly and/or individually, deprived Mr. Ames of his First Amendment rights when they retaliated against him for filing a grievance by terminating his employment.

44. Officer Shaw and Counselor Hudson took an adverse action against Mr. Ames when they fired him from his job assignment in the kitchen.

9

45. Mr. Ames' submission of the September 2, 2015 grievance was a substantial and/or motivating factor in Officer Shaw and Counselor Hudson's decision to fire Mr. Ames from his job assignment.

46. On or around March 7, 2016, Officer McBee and Warden Pfister were acting under the color of state law while they were employed by the IDOC at Stateville and in connection with their review of Mr. Ames' appeal.

47. On or around March 7, 2016, Officer McBee and Warden Pfister, jointly and/or individually, deprived Mr. Ames of his First Amendment rights when they failed to evaluate and conduct an independent investigation into Mr. Ames' grievance and acquiesced to the unconstitutional retaliation against Mr. Ames for filing the September 2, 2015 grievance.

48. Mr. Ames' submission of the September 2, 2015 grievance was a substantial and/or motivating factor in the initial decision to fire Mr. Ames from his job assignment. Officer McBee and Warden Pfister retaliated against Mr. Ames for filing his grievance when they refused to investigate, or otherwise overturn, the decision.

49. On or around June 19, 2016, Ms. Benton and Mr. Baldwin were acting under the color of state law while they were employed by the IDOC and in connection with their review of Mr. Ames' appeal.

50. On or around June 19, 2016, Messrs. Benton and Baldwin deprived Mr. Ames of his First Amendment rights when they failed to conduct an independent investigation into Mr. Ames' grievance and acquiesced to the unconstitutional retaliation against Mr. Ames for filing the September 2, 2015 grievance by failing to evaluate, investigate, and/or otherwise overturn the unlawful termination.

51.     Ms. Benton and Mr. Baldwin retaliated against Mr. Ames for filing his grievance when they refused to investigate, or otherwise overturn, the decision. Mr. Ames' submission of the September 2, 2015 grievance was a substantial and/or motivating factor in their acts and omissions.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, awarding compensatory damages for his injuries, costs and reasonable attorneys' fees pursuant to 42 U.S.C § 1988 and such other relief as this Court finds just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY**.

Dated: January 6, 2016                                             Respectfully submitted,

/s/ *Tiffany S. Fordyce*

Tiffany S. Fordyce
Aaron S. Klein
Michael T. Baier
GREENBERG TRAURIG, LLP
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
Tel: 312.456.1031
Fax: 312.899.0329
fordycet@gtlaw.com
kleina@gtlaw.com
baierm@gtlaw.com