UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS R. AMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 9213 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| JOEL SHAW et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Thomas Ames ("Plaintiff"), a former inmate[1] at the Stateville Correctional Center ("Stateville"), filed this action pursuant to 42 U.S.C. § 1983 alleging that Stateville correctional officer Joel Shaw ("Shaw") and correctional counselor Morgan Hudson ("Hudson") retaliated against him for engaging in conduct protected by the First Amendment of the U.S. Constitution. (R. 54, Second Am. Compl. ¶¶ 34-38.) Pursuant to Federal Rule of Civil Procedure 56, Defendants move for summary judgment in their favor on all of Plaintiff's claims. (R. 98, Mot. for Summ. J. at 1.) For the reasons stated below, Defendants' motion is granted.

## RELEVANT FACTS

The following facts are undisputed unless otherwise stated. From December 1999 until September 2016, Plaintiff was incarcerated at Stateville. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 1; R. 98-3, Pl.'s Dep. Tr. at 13.) Throughout 2015, Shaw was employed by the Illinois Department of Corrections ("IDOC") and was working as a correctional officer at Stateville. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 3; R. 98-5, Shaw Dep. Tr. at 12-15.) Hudson was also employed by IDOC

---

[1] Plaintiff is still incarcerated, but he is currently being held at the Pinckneyville Correctional Center. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 1.)

throughout 2015, as a counselor for Stateville inmates. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 2; R. 98-4, Hudson Dep. Tr. at 15-16.)

Beginning sometime in 2010, and until September 10, 2015, Plaintiff worked in Stateville's kitchens managing the day-to-day operations of the kitchens, unloading food from supply trucks, and keeping inventory. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 6.) On September 2, 2015, Shaw and a second unidentified IDOC employee interviewed Plaintiff in furtherance of an investigation into contraband found in the prison. (*Id.* ¶¶ 7-8.) Shaw informed Plaintiff that excess food trays from Stateville's kitchens had been found in inmates' housing units. (*Id.* ¶¶ 7-8, 13.) In response, Plaintiff said that he had no information about the food trays and that his job assignment did not involve preparing food trays for inmates. (*Id.* ¶ 11.) The parties dispute whether Shaw acted in a "threatening and coercive manner" or explicitly made threats to terminate Plaintiff and other inmates during the interview. (*Id.* ¶¶ 9-10.) Shaw interviewed another 19 inmate workers that day regarding the excess food trays. (*Id.* ¶ 12.)

Later in the day on September 2, 2015, Plaintiff prepared a written grievance detailing Shaw's "threatening and coercive tactics," and he submitted the grievance "by placing it in the bars of his cell."[2] (*Id.* ¶¶ 17-18.) Plaintiff does not know who picked up the grievance but knows that neither Shaw nor Hudson picked up the grievance. (*Id.* ¶ 19.)

As a correctional counselor, Hudson's job duties included reviewing and responding to prisoner grievances. (R. 98-4, Hudson Dep. Tr. at 16-17.) Hudson had a practice of writing the date on grievances after he received them, but there was no date written down on a "date received" field in Plaintiff's September 2 grievance. (R. 135, Pl.'s Resp. to Defs.' Facts ¶¶ 20-21.) When Hudson responded to a grievance, he recorded his response in the complainant's

---

[2] Defendants admit that Plaintiff "submitted the [September 2] grievance to Counselor Hudson for review." (R. 55, Answer ¶ 13.)

2

"Cumulative Counseling Summary" ("CHAMP") log.[3] (*Id.* ¶ 22.) Hudson, however, did not record a response to Plaintiff's September 2 grievance in Plaintiff's CHAMP log. (*Id.* ¶ 23.) Based on these facts, Hudson testified that he did not receive Plaintiff's September 2 grievance. (*Id.* ¶ 27.) He also had no independent recollection of receiving it. (R. 98-4, Hudson Dep. Tr. at 64-67.)

Shaw never saw the grievance that Plaintiff submitted on September 2, 2015, nor did Shaw ever speak with Hudson about that grievance.[4] (R. 135, Pl.'s Resp. to Defs.' Facts ¶¶ 28-29.) Shaw first learned about the grievance shortly before his deposition in this case. (R. 98-5, Shaw Dep. Tr. at 65-66, 100-01 ("Q. When did you first learn about this grievance? A. Just now. Well, 10 minutes ago.").) On September 9, 2015, Shaw sent an email to Karen Rabideau ("Rabideau"), another Stateville officer, directing her to remove Plaintiff and five other inmates from their positions in Stateville's kitchens. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 30.) Shaw's email terminating Plaintiff stated that "the following inmate workers are to be terminated from their job assignments effective immediately," and Plaintiff was listed among the persons to be

---

[3] Plaintiff submits that this fact is disputed in his Local Rule 56.1 response to Defendants' statement of facts, but he cites no evidence disputing that *Hudson* recorded his responses to grievances in complainants' CHAMP logs. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 22.) Instead, Plaintiff states that *Karen Rabideau*, "who at one time served in the same capacity as [Hudson,] . . . testified that responses to grievances are not always included in the CHAMP log and that Stateville has no policies with such a requirement." (*Id.*) This testimony does not contradict or otherwise address the fact that *Hudson* had a practice of recording his responses in CHAMP logs. (*See id.*)

[4] Plaintiff represents that this fact is disputed based on his reasoning that "there is other circumstantial evidence in the record, including the Shaw Email, [Plaintiff's] job performance, and lack of stated reason as to [Plaintiff's] termination that conflicts with Officer Shaw's testimony." (*Id.* ¶ 22.) This response, however, is argumentative and evasive as it does not squarely address whether Shaw saw the grievance that Plaintiff submitted on September 2, 2015; therefore, Defendants' factual statement that Shaw never saw the September 2 grievance is admitted as true. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015) ("The non-moving party's failure to admit or deny facts as presented in the moving party's statement . . . render the facts . . . undisputed."); *Hampton v. Dewlow*, No. 12 C 0528, 2013 WL 5288149, at *1 (N.D. Ill. Sept. 18, 2013) ("Here, some of [the plaintiff's] Rule 56.1(b)(3)(B) responses are evasive and do not directly contradict Defendants' Rule 56.1(a)(3) Statement of Facts, . . . therefore, the Court admits these facts as true.").

terminated. (R. 135-1 at 83, Sept. 9, 2015, Email.) The following day, Plaintiff was removed from his job assignment in Stateville's kitchens. (R. 135, Pl.'s Resp. to Defs.' Facts ¶¶ 31-32.) He received a termination letter from Rabideau stating that "[y]our assignment termination was based on staff recommendation[] and administrative reasons." (R. 135-1 at 85, Termination Letter.)

The parties dispute the basis for Plaintiff's termination, and no single person involved with Plaintiff's termination can provide a more specific reason why Plaintiff was terminated beyond the reasons set forth in Rabideau's letter. (R. 143, Pl.'s Resp. to Add'l Facts ¶¶ 49, 63.) There is also no document that offers more detail as to why Plaintiff was terminated. (*Id.* ¶ 64.) The parties also dispute whether Plaintiff was terminated at Shaw's direction or at the Stateville warden's direction. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 34; R. 143, Pl.'s Resp. to Add'l Facts ¶¶ 50, 61.)

There is evidence, however, that several Stateville employees provided recommendations as to whether Plaintiff should be terminated from his job assignment. (*See* R. 135-1 at 90, Vote Sheet.) In a "Vote Sheet," a form in which Stateville officers in charge of Plaintiff voted as to whether Plaintiff should be terminated from his position, Rabideau recommended that Plaintiff should not be terminated because he never received a disciplinary "ticket" related to his job performance. (R. 143, Pl.'s Resp. to Add'l Facts ¶ 51.) The parties dispute whether Plaintiff was terminated before his supervisors completed the Vote Sheet. (*Id.* ¶ 48.) One of his supervisors, Quentin Tanner ("Tanner"), testified that Plaintiff was "a good worker," "very good at his job," and had no problems related to his job performance. (*Id.* ¶ 58.) Tanner requested several times that Plaintiff's job assignment be extended "because he was such an exceptional, trustworthy employee." (*Id.* ¶ 59.) Tanner believes that Plaintiff should not have been terminated. (*Id.* ¶ 60.)

4

Plaintiff was earning $90 a month at his kitchen job assignment, and he earned $10 a month after his termination on September 10, 2015. (*Id.* ¶ 62.)

On September 16, 2015, Hudson received a grievance from Plaintiff dated September 10, 2015. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 35.) The September 10 grievance accused Shaw of terminating Plaintiff from his kitchen assignment in retaliation for Plaintiff's grievance that was submitted on September 2, 2015. (*Id.*) With respect to the September 2 grievance, Hudson did nothing to respond to or investigate it and instead relied on Rabideau to respond to the grievance. (R. 143, Pl.'s Resp. to Add'l Facts ¶ 54.)

Hudson never brought the September 10 grievance to Shaw's attention, and the two Defendants never discussed that grievance.[5] (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 40.) Hudson never spoke with Shaw about Plaintiff, and Hudson never told Shaw to remove Plaintiff from his job assignment.[6] (*Id.* ¶¶ 43-44.) Hudson was not responsible for or otherwise involved with removing inmates from their job assignments. (R. 135-1 at 21, Hudson Dep. Tr.) Plaintiff "has no direct evidence, and only his own 'gatherings[,]' for the conclusion that he was fired in

---

[5] Plaintiff's response to this proffered fact is yet again evasive and deemed admitted. *See Curtis*, 807 F.3d at 218-19; *Hampton*, 2013 WL 5288149, at *1. Plaintiff does not cite any evidence rebutting this fact and instead argues that "[t]he circumstantial evidence points to collusion[.]" (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 40.) The evidence Plaintiff cites does not relate to any "collusion" between Shaw and Hudson, and Plaintiff does not explain how the cited evidence shows any such "collusion," (*id.*). *See Ativie v. NorthShore Univ. Healthsystem*, No. 15 C 10977, 2017 WL 714113, at *2 (N.D. Ill. Feb. 23, 2017) ("[A]rgumentative, vague, evasive, and ambiguous responses are not sufficient to render a fact disputed under Local Rule 56.1.").

[6] Plaintiff does not address these proffered facts, and instead argues that "there is other circumstantial evidence in the record, including the Shaw Email, [Plaintiff's] job performance, and lack of stated reason as to [Plaintiff's] termination that conflicts with this testimony." (R. 135, Pl.'s Resp. to Defs.' Facts ¶¶ 43-44.) The precise factual question is whether Shaw and Hudson spoke to each other about Plaintiff, and Plaintiff does not put forth any evidence related to this precise issue. (*See id.*) Plaintiff's response that "other circumstantial evidence" rebuts this fact—without specifying how—is an argument that fails to create any factual dispute under Local Rule 56.1. *See Ativie*, 2017 WL 714113, at *2.

retaliation for complaining about Officer Shaw's conduct." (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 45.)

## PROCEDURAL HISTORY

On September 23, 2016, Plaintiff filed his initial complaint. (R. 1, Compl.) With the help of appointed counsel,[7] (R. 8), Plaintiff later amended his complaint, (R. 12, Am. Compl.), and on July 26, 2017, the Court dismissed several defendants from the amended complaint for failure to state a claim because those defendants were not alleged to have participated in the conduct that harmed Plaintiff. (R. 40, Order at 6-10.)

On October 18, 2017, Plaintiff filed a seconded amended complaint, which is the operative complaint. (R. 54, Second Am. Compl.) Plaintiff's seconded amended complaint brings one count against Defendants for retaliation in violation of 42 U.S.C. § 1983. (*Id.* ¶¶ 34-38.) Plaintiff alleges that Defendants terminated his kitchen job assignment because of his September 2 grievance against Shaw, which is an activity protected by the First Amendment. (*Id.* ¶¶ 34-38.) After several unsuccessful attempts to settle the case, the case advanced to the close of discovery, and Defendants filed a motion for summary judgment. (*See* R. 76, Min. Entry; R. 95, Min. Entry; R. 98, Mot. for Summ. J.)

Defendants argue that the Court should grant summary judgment because Plaintiff puts forth no evidence of a causal connection between Plaintiff's September 2 grievance and his termination from the kitchen job assignment. (R. 98-1, Mem. at 5-6.) Defendants also contend that the case should not proceed to trial because Plaintiff presents no evidence that Defendants' actions were likely to deter Plaintiff from further activity protected by the First Amendment since he filed a second grievance shortly after his September 2 grievance and termination. (*Id.* at

---

[7] The Court commends appointed counsel for their work representing Plaintiff and advancing the case.

6-10.) Finally, Defendants argue that Plaintiff offers no evidence showing that either Defendant acted with a retaliatory motive, which is fatal to his claims. (*Id.* at 10-13.)

In response, Plaintiff maintains that there are factual disputes precluding summary judgment. (R. 134, Resp. at 1.) First, Plaintiff argues that whether his termination from the kitchen job assignment was likely to deter him from engaging in further protected activity must be judged from the perspective of an "ordinary person" instead of Plaintiff's perspective; therefore, the fact that he filed grievances after his termination does not lead to the conclusion that Defendants' actions were unlikely to deter an "ordinary person" from engaging in protected activity. (*Id.* at 7-8.) Next, Plaintiff contends that there is a factual dispute as to whether Shaw knew of the September 2 grievance, and therefore, summary judgment is improper. (*Id.* at 8-10.) More specifically, Plaintiff argues that his positive performance reviews and the suspicious timing of his termination create a triable issue of fact as to whether his termination was causally linked to his September 2 grievance. (*Id.*) According to Plaintiff, there are also a number of other disputed factual issues that preclude summary judgment, which include: inconsistent testimony as to the reason for Plaintiff's termination; Shaw's failure to remember details regarding Plaintiff's termination; and Shaw's failure to provide evidence of a non-pretextual reason for Plaintiff's termination. (*Id.* at 10-13.)

With respect to the retaliation claim against Hudson, Plaintiff argues that this claim is different than the one against Shaw because it is based on Hudson's failure to investigate Plaintiff's grievances. (*Id.* at 13-15.) Plaintiff submits that there is a factual dispute related to whether Hudson turned a "blind eye" to the claims set forth in Plaintiff's grievances, and therefore the Court cannot grant summary judgment in Hudson's favor. (*Id.*)

7

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether a dispute exists, the Court must "consider all of the evidence in the record in the light most favorable to the non-moving party[] and . . . draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [his or her] favor." *Id.* (citation and internal quotation

marks omitted). "Inferences supported only by speculation or conjecture will not suffice," and neither "will the mere scintilla of evidence." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). In addition, not all factual disputes will preclude the entry of summary judgment but only disputes of material fact—"irrelevant or unnecessary factual disputes do not preclude summary judgment." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citation and internal quotation mark omitted). "[T]he substantive law will identify which facts are material." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citation omitted).

In deciding a summary judgment motion, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson*, 477 U.S. at 255; *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011). Instead, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Anderson*, 477 U.S. at 249).

## ANALYSIS

### I. Shaw

To prevail on his First Amendment retaliation claim against Shaw, Plaintiff must show that: "(1) he engaged in protected activity; (2) he suffered a deprivation likely to deter future protected activity; and (3) his protected activity was a motivating factor" in Shaw's decision to retaliate. *Daugherty*, 906 F.3d at 610. "Under the first element, the filing of a prison grievance is a constitutionally protected activity supporting a First Amendment retaliation claim[.]" *Id.* Therefore, the first element is satisfied because there is no dispute that the protected activity at issue is Plaintiff's prison grievance that he submitted on September 2, 2015. (R. 98-1, Mem. at 6; R. 134, Resp. at 7 n.2.)

With respect to the second element, Shaw argues that Plaintiff presents no evidence that his termination from the kitchen job assignment was likely to deter activity protected by the First Amendment. (R. 98-1. Mem. at 6, 9-10.) In Shaw's view, the fact that Plaintiff filed a second grievance after being terminated from the kitchen job assignment is conclusive proof that Plaintiff's termination was not likely to deter the filing of future grievances. (*Id.*)

To determine whether Shaw's actions are likely to deter protected activity, however, the Court applies "an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). Thus, the fact that Plaintiff himself was undeterred from filing another grievance is not relevant; rather, the controlling inquiry is whether a person of "ordinary firmness" would be deterred from filing future grievances. *Petties v. Dybas*, No. 16-CV-7929, 2018 WL 3970148, at *5 (N.D. Ill. Aug. 20, 2018); *see also McDonough v. City of Chicago*, 743 F. Supp. 2d 961, 973 (N.D. Ill. 2010) ("The issue is not whether the plaintiff was deterred, but rather whether a reasonable person would be deterred."). Viewing the record as a whole, the Court cannot say as a matter of law whether a termination from a favorable job assignment is likely to deter a person of ordinary firmness from engaging in activity protected by the First Amendment. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) ("[B]ecause both plaintiffs were terminated, it is undisputed that each suffered a deprivation likely to deter the exercise of free expression."); *Snedeker v. Girot*, No. 16-CV-10907, 2017 WL 3704843, at *5 (N.D. Ill. Aug. 28, 2017) ("This is not a high threshold—any deprivation under color of law that is likely to deter the exercise of free speech qualifies." (alteration, citation, and internal quotation marks omitted)). This issue is best left for a jury to decide. *See McDonough*, 743 F. Supp. 2d at 974 ("The question of whether this harassment would deter a reasonable person from

speaking is a question to be decided by the finder-of-fact[.]"). The Court, therefore, denies summary judgment on the grounds that Plaintiff's termination was unlikely to deter future protected activity.

Plaintiff's claim against Shaw, however, cannot survive summary judgment on the third element—whether Plaintiff's protected activity was a motivating factor in Shaw's decision to terminate Plaintiff. *See Daugherty*, 906 F.3d at 610. With respect to this element, if Plaintiff establishes that his grievance was a motivating factor for his termination, the burden shifts to Shaw to show that he "would have taken the same action even in the absence of the protected conduct." *Yahnke v. Kane Cty.*, 823 F.3d 1066, 1070-71 (7th Cir. 2016). If Shaw satisfies his burden, the burden then shifts back to Plaintiff to show that Shaw's reason for Plaintiff's termination was pretextual. *See id.* at 1071; *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012) ("Once a defendant produces evidence that the same decision would have been made in the absence of the protected speech, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus.").

Plaintiff's retaliation claim against Shaw is premised on the grievance that Plaintiff submitted on September 2, 2015, but Plaintiff puts forth no evidence showing that Shaw ever received or knew about the September 2 grievance before he terminated Plaintiff. Rather, Plaintiff fails to dispute Shaw's testimony that he never saw the September 2 grievance and that he first learned of it moments before his deposition in this case. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 28; R. 98-5, Shaw Dep. Tr. at 65-66, 100-01.) "In order to demonstrate that a defendant was motivated to retaliate based on protected speech, *the plaintiff must first produce evidence that the defendant knew about the protected speech.*" *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017) (emphasis added). Plaintiff does not produce any such evidence, and therefore

11

summary judgment is warranted. *See Diadenko v. Folino*, 741 F.3d 751, 756-57 (7th Cir. 2013) (rejecting arguments to defeat summary judgment based on circumstantial evidence of suspicious timing where the plaintiff provided no evidence that the defendant knew of the protected speech that purportedly motivated the defendant to retaliate); *Van Dyke v. Barnes*, No. 13 C 5971, 2017 WL 1105390, at *7 (N.D. Ill. Mar. 24, 2017) (granting summary judgment despite circumstantial evidence giving rise to suspicion of retaliation because there was no evidence that the defendant knew of the plaintiff's conduct that was protected under the First Amendment); *cf. Petties*, 2018 WL 3970148, at *7 (denying summary judgment because the plaintiff rebutted the defendants' testimony that they were unaware of plaintiff's protected First Amendment activity with testimony that he and another inmate overheard the defendants talking about the plaintiff's protected activity).

To prove retaliation and Shaw's knowledge of the September 2 grievance, Plaintiff cites "other circumstantial evidence" raising the suspicion of retaliation that is unrelated to Shaw's knowledge of the September 2 grievance. (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 28.) His own speculation, however, cannot defeat summary judgment, and such circumstantial evidence would require a jury to speculate as to Shaw's knowledge of the September 2 grievance. *See Consolino*, 872 F.3d at 831 ("[S]peculation will not defeat a summary judgment motion[.]"); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 (7th Cir. 2011) ("This argument is circular: Wackett is essentially maintaining that the defendants must have known about his protected speech because they retaliated against him. . . . For a viable case, Wackett must prove defendants' knowledge of the protected speech to establish retaliation.").

Additionally, much of the "other circumstantial evidence" that Plaintiff relies on to defeat summary judgment—his positive performance reviews, the date the Vote Sheet was completed,

and the lack of a stated reason for his termination—goes towards the argument that Defendants' proffered reason for Plaintiff's termination was pretextual. (R. 134, Resp. at 10-11.) This "puts the cart before the horse because it prematurely shifts the burden of proof to" Shaw to provide an explanation for Plaintiff's termination before Plaintiff has established a prima facie case. *Anderson v. Iacullo*, 963 F. Supp. 2d 818, 834 (N.D. Ill. 2013) (explaining that the defendant "has no burden and does not need to show that there were legitimate . . . reasons for his decision until [the plaintiff] first shows that his [protected activity] was a motivating factor in [the defendant's] decision seek [the plaintiff's] termination"); *see also Yahnke*, 823 F.3d at 1070-71; *Thayer*, 705 F.3d at 252.

Plaintiff also argues that Shaw's email terminating Plaintiff "conflicts" with Shaw's testimony that he did not know of the September 2 grievance, (R. 135, Pl.'s Resp. to Defs.' Facts ¶ 28), but there is nothing in that email from which a reasonable juror could infer that Shaw was aware of the September 2 grievance. The email simply states that "the following inmate workers are to be terminated from their job assignments effective immediately," and Plaintiff is listed among the persons to be terminated. (R. 135-1 at 83, Sept. 9, 2015, Email.) Ultimately, Defendant has presented evidence that Shaw never knew of or received the September 2 grievance before he terminated Plaintiff. (R. 135, Pl.'s Resp. to Defs.' Facts ¶¶ 28-29; R. 98-5, Shaw Dep. Tr. at 65-66, 100-01.) Plaintiff, therefore, has the burden to "go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [his] favor." *Sterk*, 770 F.3d at 627; *see also Genova v. Kellogg*, No. 12 C 3105, 2015 WL 3930351, at *6 (N.D. Ill. June 25, 2015) ("[A]t the summary judgment phase . . . the nonmoving party . . . must do more than question another party's self-serving testimony, he must cite facts in

the record to support an assertion that a triable issue exists as to [the defendant's] knowledge."). Plaintiff, however, fails to satisfy this burden and produces no evidence that would give rise to a reasonable inference that Shaw knew of the September 2 grievance. Plaintiff's claim against Shaw cannot avoid summary judgment as a result. *See Diadenko*, 741 F.3d at 756; *Wackett*, 642 F.3d at 582; *Mcgreal v. Vill. of Orland Park*, No. 12 C 5135, 2016 WL 1535153, at *8-9 (N.D. Ill. Apr. 15, 2016) (granting summary judgment where there was no evidence the defendant knew of the plaintiff's protected activity even though the plaintiff presented circumstantial evidence of suspicious timing to show retaliation), *aff'd*, 850 F.3d 308 (7th Cir. 2017).

The Court rejects Plaintiff's reliance on *Brown & Williamson Tobacco Corp. v. Jacobson*, No. 82 C 1648, 1985 WL 6432 (N.D. Ill. Mar. 14, 1985) and *Prange v. Borders, Inc.*, No. 05 C 2194, 2006 WL 2632013 (N.D. Ill. Sept. 11, 2006), to argue that Shaw's lack of credibility and recollection of the events surrounding Plaintiff's termination create a triable issue that defeats summary judgment. (*See* R. 134, Resp. at 11-12.) *Brown* is a libel case and has no relevance to this action. *Brown*, 1985 WL 6432, at *1. In *Brown*, the court denied summary judgment because the defendant's credibility was placed into question on the issue of whether the defendant acted with malice—an issue particular to libel cases implicating one's subjective mental state. *Brown*, 1985 WL 6432, at *1. Plaintiff's shortcomings are unrelated to Shaw's subjective beliefs; rather, the problem with Plaintiff's case lies with the objective and unrebutted fact that Shaw did not know of the September 2 grievance before he terminated Plaintiff. (R. 135, Pl.'s Resp. to Defs.' Facts ¶¶ 18-19, 28.)

*Prange* is likewise unhelpful because that case involved a defendant who knew of the protected activity at issue. In *Prange*—a case brought under the Fair Labor Standards Act, 29 U.S.C. § 206, and not Section 1983—the court ruled that the plaintiff presented enough

14

evidence, "though barely," to survive summary judgment because, among other reasons, "the defendant [had] not established that [the plaintiff's supervisor] did not know about plaintiff's lawsuit when establishing the new . . . 'directive'" that resulted in an adverse employment action affecting the plaintiff. *Prange*, 2006 WL 2632013, at *6-7. Plaintiff, on the other hand, fails to come forward with evidence showing that Shaw knew of the September 2 grievance before Plaintiff's termination, and it is undisputed that Shaw did not receive and was unaware of the September 2 grievance before Plaintiff's termination. (R. 135, Pl.'s Resp. to Defs.' Facts ¶¶ 18-19, 28; R. 98-5, Shaw Dep. Tr. at 65-66, 100-01.) Summary judgment, therefore, is proper on Plaintiff's First Amendment retaliation claim, *Wackett*, 642 F.3d at 582, and the circumstantial evidence Plaintiff cites cannot save his claim without any evidence that Shaw knew of or received the September 2 grievance, *see Diadenko*, 741 F.3d at 756; *Van Dyke*, 2017 WL 1105390, at *7.

As with *Prange*, the other cases that Plaintiff cites in which summary judgment on a retaliation claim was denied or found to be improper are cases where the defendant either knew of the protected activity or there was a factual dispute as to whether the defendant knew of the protected activity. (*See* R. 134, Resp. at 9-11 (citing *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011) (case where there was evidence that the plaintiff's supervisor knew about protected activity); *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772-73 (7th Cir. 2008) (same); *Mays v. Springborn*, 575 F.3d 643, 645-46 & 650 (7th Cir. 2009) (case involving retaliation by prison guards against plaintiff who showed them a memorandum about proper searches and there was a factual dispute as to whether the plaintiff showed the prison guards the memorandum that led to the prison guards' retaliation).) Plaintiff's claim against Shaw simply cannot survive summary judgment without evidence that Shaw knew of Plaintiff's

protected activity. *See, e.g., Gross v. Town of Cicero*, 619 F.3d 697, 708 (7th Cir. 2010) ("Because Gross failed to produce any evidence that the defendants were aware of *his* speech, Gross cannot demonstrate a triable issue of fact that his discharge was at all motivated by his [protected speech]." (emphasis in original)); *Schmoeller v. Vill. of Island Lake*, 324 F. Supp. 3d 983, 990 (N.D. Ill. 2018) ("Without any evidence of knowledge of Schmoeller's political affiliation, a jury could not conclude that the commissioners were politically motivated to deny him a promotion."). The Court, therefore, grants Defendants' motion for summary judgment as to the claim against Shaw.

**II.     Hudson**

Turning to the First Amendment retaliation claim against Hudson and applying the same principles above, the Court finds that Plaintiff survives summary judgment on the first two elements of his First Amendment retaliation claim—whether his September 2, 2015, grievance is a protected activity and whether his termination from the kitchen job assignment is likely to deter future protected activity. *See Daugherty*, 906 F.3d at 610. Plaintiff, however, does not present any evidence showing that Hudson was personally involved in the decision to terminate Plaintiff. (R. 135, Pl.'s Resp. to Defs.' Facts ¶¶ 43-44; R. 135-1 at 21, Hudson Dep. Tr.) Nor does Plaintiff rebut Defendants' assertion that Hudson lacked any personal involvement with the decision to terminate Plaintiff. (*See* R. 98-1, Mem. at 6; R. 134, Resp. at 13-15.) This is fatal to any First Amendment retaliation claim against Hudson based on Plaintiff's termination from the kitchen job assignment. *See Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation." (emphasis added, citation, and internal quotation marks omitted)); *LaBoy v. Clements*, No. 15 CV 10771, 2017 WL 2936705, at *14 (N.D. Ill. July 10, 2017) (granting summary judgment

because the plaintiff "provided no evidence establishing any Defendant's direct, personal involvement").

Plaintiff argues, however, that his claim against Hudson is not related to Plaintiff's termination but instead related to "Hudson's investigation (or lack thereof)" of the grievances that Plaintiff submitted following his termination. (R. 134, Resp. at 14.) This is not the theory of liability described in the operative complaint, which alleges that "Hudson took an adverse action against [Plaintiff] when [he] fired him from his job assignment in the kitchen." (R. 54, Second Am. Compl. ¶ 37.) While Plaintiff alleges that Hudson failed to adequately investigate his grievances, (*id.* ¶¶ 21-22), there is nothing in the operative complaint putting Hudson on notice that the First Amendment retaliation claim against him is based on a failure to investigate as opposed to Plaintiff's termination from the kitchen job assignment, (*id.* ¶¶ 34-38). Plaintiff cannot amend his theory of the case by way of his summary judgment briefs; accordingly, this new theory of the case cannot defeat summary judgment. *See Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997) ("He did not include the promissory estoppel claim in his complaint or his amended complaint, adding it only at the summary judgment stage. This is too late in the day to be adding new claims.").

For the sake of completeness, however, Plaintiff nonetheless cannot survive summary judgment based on his theory that Hudson deprived him of his constitutional rights by failing to adequately investigate prison grievances. Relying on *Verser v. Elyea*, 113 F. Supp. 2d 1211 (N.D. Ill. 2000), Plaintiff argues that Hudson can be held liable if Plaintiff's termination occurred at Hudson's direction or with Hudson's knowledge or consent such that Hudson knew about the conduct and "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Verser*, 113 F. Supp. 2d at 1215. Plaintiff's theory is that Hudson "participated in" a deprivation of Plaintiff's

because the plaintiff "provided no evidence establishing any Defendant's direct, personal involvement").

Plaintiff argues, however, that his claim against Hudson is not related to Plaintiff's termination but instead related to "Hudson's investigation (or lack thereof)" of the grievances that Plaintiff submitted following his termination. (R. 134, Resp. at 14.) This is not the theory of liability described in the operative complaint, which alleges that "Hudson took an adverse action against [Plaintiff] when [he] fired him from his job assignment in the kitchen." (R. 54, Second Am. Compl. ¶ 37.) While Plaintiff alleges that Hudson failed to adequately investigate his grievances, (*id.* ¶¶ 21-22), there is nothing in the operative complaint putting Hudson on notice that the First Amendment retaliation claim against him is based on a failure to investigate as opposed to Plaintiff's termination from the kitchen job assignment, (*id.* ¶¶ 34-38). Plaintiff cannot amend his theory of the case by way of his summary judgment briefs; accordingly, this new theory of the case cannot defeat summary judgment. *See Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997) ("He did not include the promissory estoppel claim in his complaint or his amended complaint, adding it only at the summary judgment stage. This is too late in the day to be adding new claims.").

For the sake of completeness, however, Plaintiff nonetheless cannot survive summary judgment based on his theory that Hudson deprived him of his constitutional rights by failing to adequately investigate prison grievances. Relying on *Verser v. Elyea*, 113 F. Supp. 2d 1211 (N.D. Ill. 2000), Plaintiff argues that Hudson can be held liable if Plaintiff's termination occurred at Hudson's direction or with Hudson's knowledge or consent such that Hudson knew about the conduct and "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Verser*, 113 F. Supp. 2d at 1215. Plaintiff's theory is that Hudson "participated in" a deprivation of Plaintiff's

First Amendment rights because he ignored Plaintiff's grievances and turned a "blind eye to Shaw's unconstitutional actions" by failing to investigate the claims in those grievances. (R. 134, Resp. at 14-15.)

As this Court explained in its order on the motion to dismiss in this case, "[p]rison grievance procedures are not mandated by the First Amendment"; therefore, the "mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct" cannot give rise to a viable claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also Owens v. Godinez*, 860 F.3d 434, 438 (7th Cir. 2017) (rejecting the plaintiff's theory of liability under 42 U.S.C. § 1983 based on "grievance officers and counselors he accused of ignoring his administrative complaints and appeals"). Accordingly, the Court finds that Plaintiff cannot survive summary judgment on his claim that Hudson failed to adequately investigate or respond to Plaintiff's grievances where Hudson lacked any personal involvement in Plaintiff's termination. *See Hinsley*, 635 F.3d at 953; *Godinez*, 860 F.3d at 438.

Plaintiff's reliance on *Verser* is misplaced for several reasons. First, to the extent that Plaintiff relies on *Verser* for the principle that Hudson can be held liable for Shaw's conduct if Hudson knew of Shaw's conduct and directed Shaw to terminate Plaintiff,[8] *Verser*, 113 F. Supp. 2d at 1216, *Verser* does not help Plaintiff because he presents no evidence showing that Hudson directed Plaintiff's termination or was otherwise involved in Plaintiff's termination. (R. 135, Pl.'s Resp. to Defs.' Facts ¶¶ 43-44; R. 135-1 at 21, Hudson Dep. Tr.)

Additionally, *Verser* is not analogous because there the plaintiff claimed that the defendants deprived him of his Eighth Amendment right against cruel and unusual punishment

---

[8] Such a claim, of course, would also require Plaintiff to prove that Shaw deprived him of his constitutional rights. *See Verser v. Elyea*, 113 F. Supp. 2d 1211, 1216 (N.D. Ill. 2000). The Court has determined above that he has failed to so.

18

by acting with deliberate indifference to his serious medical needs. *See Verser*, 113 F. Supp. 2d at 1215. The court explained that in such cases, a prison official can be held liable if a hazardous prison condition or medical need is brought to the prison official's attention by way of a prison grievance and not remedied. *See id.* at 1215-16. Plaintiff, on the other hand, brings no Eighth Amendment claim, or a claim that his prison grievances alerted Hudson to a constitutional deprivation that Hudson could have prevented or remedied.

Thus, while it is true that "a prison official can be liable under 42 U.S.C. § 1983 for failing to respond to violations of a prisoner's constitutional rights that come to his or her attention via the grievance procedure," this "is a consequence of the official's duty under federal law to prevent and remedy constitutional violations, not a duty to respond to grievances." *Blankenship v. Kittle*, No. 03 C 3573, 2003 WL 22048712, at *3 (N.D. Ill. Aug. 6, 2003) (citing *Verser* and explaining that "[t]here is no constitutional right to an institutional grievance procedure"). There is no evidence that Hudson played a role in Plaintiff's termination. (*See* R. 135-1 at 21, Hudson Dep. Tr.) There is also no evidence that Hudson knew that Shaw was going to terminate Plaintiff or that Hudson could have prevented Shaw's termination. Rather, Plaintiff's argument relates entirely to Hudson's failure to adequately investigate a prison grievance, (R. 134, Resp. at 14-15), which is not a cognizable claim under Section 1983. *See Godinez*, 860 F.3d at 438; *Hinsley*, 635 F.3d at 953. The Court, therefore, grants summary judgment in Hudson's favor.

## CONCLUSION

For the foregoing reasons Defendants' motion for summary judgment (R. 98) is GRANTED. Plaintiff has simply not supplied enough material issues of fact to allow a jury to

return a valid judgment in his favor against either Defendant. Judgment is ENTERED in favor of Defendants and against Plaintiff on all counts in his second amended complaint.

The Court expressly commends Plaintiff's counsel for their exemplary lawyering in this case. Unfortunately, the undisputed facts in this case do not merit proceeding to trial. All pending motions in limine (R. 108, R. 109, R. 110, R. 111, R. 112, R. 113, R. 114, R. 115, R. 116, R. 117, R. 118, R. 119) are therefore DENIED as moot.

ENTERED: *[signature]*
Chief Judge Rubén Castillo
United States District Court

Dated: **December 7, 2018**